**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3037-21

BENJAMIN W. LEWITT,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

TOWNSHIP OF GLOUCESTER,
WILLIAM HARRY EARLE,
DAVID HARKINS, EDWARD
O'LANO, and CHRISTOPHER
CRABTREE,

      Defendants-Respondents/
      Cross-Appellants.

_____

Submitted October 24, 2023 – Decided March 15, 2024

Before Judges Sumners and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0164-20.

The Vigilante Law Firm, P.C., attorneys for appellant/cross-respondent (Jacqueline M. Vigilante, on the briefs).

Archer & Greiner, attorneys for respondents/cross-appellants (Douglas Diaz, of counsel and on the briefs; Daniel J. DeFiglio, on the briefs).

PER CURIAM

Plaintiff Benjamin W. Lewitt, a Gloucester Township police officer, appeals an April 22, 2022 Law Division summary judgment order dismissing his complaint alleging violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8. Defendants Township of Gloucester, William Harry Earle, David Harkins, Edward O'Lano, and Christopher Crabtree cross-appeal from an order of the same date, extending the discovery end date. Having considered the record, the parties' arguments, and applicable law, we affirm the summary judgment order and dismiss defendants' cross-appeal as moot.

I

In 2012, about a year after Gloucester Township Police Department (Department) hired plaintiff as a patrol officer, a variety of text messages were exchanged between him and other Department officers using racial epithets and gloating over the physical abuse of arrestees. Plaintiff was suspended without pay for four days and lost thirty-two vacation hours. The other officers were also disciplined.

2

In 2015, an internal affairs investigation concluded plaintiff violated the Department's drug screening policy. Plaintiff failed to disclose to the Chief of Police that he was taking a prescribed drug which appeared in his drug test. Later that year, plaintiff received a written reprimand for failing "to prevent injury by not properly handling a prisoner while he was in custody in police headquarters."

In March 2016, the Department issued plaintiff a written reprimand for "failing to activate [the] microphone of the [police vehicle's] camera system while on a motor vehicle stop," which "hampered [the] investigative process."

On March 13, 2017, Lieutenant Crabtree and Sergeant O'Lano met with plaintiff "to discuss . . . concern[s] raised by other supervisors and officers." When plaintiff's transgressions continued, Captain Anthony Minosse sent plaintiff a five-page "Performance Awareness" email on October 4. Minosse wrote:

> Following [the March 13] meeting, over the next several months, [plaintiff] appeared to become lazy, overwhelmed, disruptive, and confrontational towards authority. Below are the detailed descriptions to support this statement.
>
> 1. Lazy – [Plaintiff] would allow other operations officers to complete his work while he regularly disappeared within Police Headquarters for extended periods of time.

2. Overwhelmed – [Plaintiff] appeared overworked at times when faced with larger operational arrest[s]. Simple tasks that would take other officers less than one hour would often take [plaintiff] several hours.

3. Disruptive – [Plaintiff] regularly and vocally complained about how supervisors picked on him for his reports, investigative procedures, and [plaintiff's] blatant disdain towards constructive criticism.

4. Confrontational – On several occasions [plaintiff] attempted to challenge supervisors over various topics from vehicle searches, departmental procedures, and report writing. On each occasion, [plaintiff] was immediately addressed, to include verbal counseling, correction, and on occasion[], verbally reprimanded in respect to his demeanor or exhibited levels of disrespect.

[(Emphasis added).]

Minosse further memorialized that between May and July,

I was required to have repeated conversations with [plaintiff] directed toward[] his report writing and the[ir] deficiencies. I noticed that [plaintiff] would attempt to hold reports or shop supervisors for report approvals. Upon identifying this behavior, I . . . instructed officers that all reports would be sent to me directly for approval. On the occasion that I was out of work for an extended period of time all reports would be forwarded to [another sergeant], for his review.

4

In late July, O'Lano directed plaintiff to correct an investigation report by removing a reference plaintiff had made to another officer's observation of a driver's "suspicious activity" leading to a motor vehicle stop, culminating in an arrest for possession of marijuana. O'Lano wanted the report to state plaintiff stopped the driver "because he was drinking beer." Plaintiff acknowledged he stopped the vehicle because he believed the driver was drinking beer. But he refused to remove the "suspicious activity" reference, interpreting O'Lano's direction to do so as a request to fabricate the report. Plaintiff instead had Lieutenant Timothy Ryan Kohlmyer approve the report. O'Lano was upset at plaintiff, stating in a group text chat "your ass is mine when I get back [to work]. Apparently[,] you have a lack of discipline and respect. These issues will be addressed upon my return."

In September, plaintiff was reassigned from the Operation Response Unit (ORU) to the patrol unit. However, his salary was not reduced.

In the years that followed, plaintiff was denied a promotion to sergeant in July 2018 and February 2019. The later time, plaintiff had the highest civil service exam score among three candidates but was not appointed due to then-Chief of Police Earle's concerns about his leadership skills.

5

Around this same time, the Department complied with the Camden County Prosecutor's Office's (CCPO) request to disclose "any exculpatory or potential impeachment information obtained on any law enforcement officer."[1]  After the Department disclosed the 2012 text messages, the CCPO advised the texts may "reflect negatively upon [plaintiff's] credibility as a witness" and recommended he not be involved in "conducting criminal investigations which may result in him signing criminal complaints."

In April 2019, in response to the CCPO's recommendation, the Department reassigned plaintiff, now labeled a "[Brady] officer," to watch desk duty.  The Department again denied plaintiff a promotion to sergeant.  Earle selected another officer who "was a better candidate than [p]laintiff based on . . . leadership skills."

In 2020, plaintiff received a written reprimand for leaving his watch desk early without supervision.  In 2021, he was issued another written reprimand for asking the radio dispatcher, not a supervisor, if he could respond to a domestic

---

[1]  The request was based on an Attorney General directive advising county departments to disclose potentially exculpatory information, pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and impeachment material under Giglio v. United States, 405 U.S. 150 (1970).  Off. of the Att'y Gen., Law Enf't Directive No. 2019-6, Directive Establishing County Policies to Comply with Brady v. Maryland and Giglio v. United States (Dec. 4, 2019), https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2019-6.pdf.

violence incident, knowing "he was not permitted [to do so] based on the policy guidelines applicable to him."

Plaintiff's request to become sergeant continued to be unsuccessful. On seven occasions from September 2019 to 2021, he was not promoted due to the CCPO's Brady concerns; the Department wanted to avoid the risk of having him testify in a criminal prosecution.

II

In January 2020, plaintiff sued defendants alleging they retaliated against him for engaging in protected activity in violation of CEPA. In his third and last amended complaint, plaintiff alleged defendants: (1) "request[ed he] modify an investigative report" in violation of state law[2]; and (2) "skipp[ed] [him] for promotion numerous times in 2019, 2020, and 2021" in favor of "a lesser[-]qualified person . . . and/or . . . improperly considered and used the improper [Brady] designation as set forth in the Special Orders as an excuse not to promote [him]."

---

[2] Plaintiff cited the following statutes: falsifying or tampering with records, N.J.S.A. 2C:21-4; frauds relating to public records, N.J.S.A. 2C:21-3; hindering prosecution, N.J.S.A. 2C:29-3; tampering with witnesses and informants (retaliation against them), N.J.S.A. 2C:28-5; tampering with public records or information, N.J.S.A. 2C:28-7; official misconduct, N.J.S.A. 2C:30-2; and obstructing administration of law or other governmental function, N.J.S.A. 2C:29-1.

On the date discovery ended and with trial scheduled in two months, defendants moved for summary judgment. Plaintiff cross-moved to extend discovery, which had twice been extended via court orders, and requested adjournment of the summary judgment motion.

Defendants' motion was granted. The judge rejected defendants' argument that plaintiff's CEPA claims were barred by the one-year statute of limitations. The judge determined the initial CEPA retaliatory claim arose in 2017, and alleged CEPA violations continued through 2021, thereby making his claims timely when suit was filed in January 2021. The judge, however, agreed with defendants that plaintiff had not made a prima facie showing of a CEPA violation.

Regarding O'Lano's request that plaintiff change the investigative report, the judge found "it's impossible to know whether or not" plaintiff reasonably believed O'Lano's "conduct was unlawful" and "it's not unreasonable to tell somebody to change the generic suspicious activity which has been problematic for [fifty] years since we don't know what somebody is referring to when they say suspicious activity." The judge found plaintiff's and O'Lano's disagreement was nothing more than "a petty dispute concerning what should be in a report." The judge found O'Lano's "request [was] to remove from the report otherwise

inadmissible hearsay that [was] not necessary for a showing of reasonable suspicion." Furthermore, the judge refused to regard "the underlying conduct that [plaintiff] complained of as . . . anything remotely protected under CEPA" because O'Lano was not "trying to hide inculpatory information that embarrassed the police force."

The judge also granted plaintiff's motion to extend discovery, reasoning:

> I don't know which motion was handled first, but since part of the opposition to the [summary judgment] motion was based upon a discovery issue, I think it's cleaner to be very specific. I would give [plaintiff's counsel] — if the Appellate Division reverses [my summary judgment order—] whatever additional discovery time at the very minimum that I would have granted [counsel] if I had denied the motion.

The judge did not address plaintiff's motion to adjourn the summary judgment motion; however, plaintiff claimed it "was sort of moot" given it was imbedded in his motion to extend discovery.

### III

In his appeal, plaintiff contends the motion judge "erred in . . . conclu[ding] . . . there was no genuine issue of material fact as to whether [p]laintiff engaged in protected conduct under CEPA when he refused to alter his [investigative] report to remove reference to [another officer's] involvement in the investigation." Plaintiff claims the judge's findings were unreasonable

because he "articulate[d] in his complaint . . . he believed . . . [O'Lano's] order violated a series of criminal statutes and the rules and regulations of his [D]epartment." The judge should have viewed "the facts in the light most favorable to . . . [p]laintiff" and let the jury decide whether his belief was "objectively reasonable to the jury." Plaintiff also claims the judge erred in sua sponte finding he was a <u>Brady</u> officer when the CCPO did not label him as such. Plaintiff asserts the designation was an issue of material fact to be decided by the jury.

IV

To establish a prima facie case under CEPA, a plaintiff must prove:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and
>
> (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

> [Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015)
> (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462
> (2003)).]

"The evidentiary burden at the prima facie stage is 'rather modest . . . .'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005) (italicization omitted) (quoting Marzano v. Comput. Sci. Corp., 91 F.3d 497, 508 (3d Cir. 1996)). Once a plaintiff establishes the four CEPA elements, the burden shifts to the defendant to "advance a legitimate, nondiscriminatory reason for the adverse conduct against the employee." Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 38 (App. Div. 2005). "If such reasons are proffered, [a] plaintiff must then raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. at 39.

Generally, a plaintiff has one year from the occurrence of the alleged retaliation to file an action under CEPA. N.J.S.A. 34:19-5. Retaliatory actions can be a single discrete action, like the failure to promote, or a hostile work environment, which consists of "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003).

11

The continuing violation doctrine is "a judicially created doctrine . . . [that] has developed as an equitable exception to the statute of limitations." Bollinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000). Under the continuing violation doctrine, which applies to CEPA claims, Green, 177 N.J. at 446-49, "a plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period," Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 6-7 (2002) (citing West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995)).

After a review of the factual record, which we undertake in complying with the applicable de novo summary judgment standard of review, Townsend v. Pierre, 221 N.J. 36, 59 (2015), and viewing the allegations in the light most favorable to plaintiff, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), we conclude plaintiff has not made a prima facie showing of a CEPA violation.

Plaintiff has not satisfied CEPA's first prong. We agree with the motion judge that plaintiff was not able to show he had a reasonable belief he would violate the law by complying with O'Lano's directive. There is no dispute plaintiff made the motor vehicle stop because he suspected the driver was

drinking beer. O'Lano appropriately directed plaintiff to change his investigative report to include his own observations in lieu of the vague "suspicious activity" observations of another officer. In fact, O'Lano had counseled plaintiff months before the incident about his report writing deficiencies. Because plaintiff has not satisfied the first prong, we need not address the other three prongs. Nevertheless, we do so for the sake of completeness.

Plaintiff has not satisfied CEPA's second prong. He fails to show he "blew the whistle" that O'Lano ordered him to violate the law. As the judge correctly determined, plaintiff's refusal to change his report is merely a labor disagreement with a superior, not whistle-blowing activity. See Klein, 377 N.J. Super. at 44 (concluding workplace disagreements over "internal procedures and priorities . . . are not [based on] an objectively reasonable belief that [legal] mandates are being violated" under CEPA).

Plaintiff has not satisfied CEPA's third prong. He has not shown defendants took any adverse employment action against him due to the investigative report incident. Plaintiff's assignment from ORU to patrol duty, then to watch desk duty, did not result in a demotion or salary loss. In fact, the watch desk duty was due to the CCPO's recommendation not the investigative

13

report incident. As for the Department's repeated decisions not to promote plaintiff, the selection processes showed the promoted officers had more experience and were similarly qualified for the sergeant position. Moreover, plaintiff's inability to investigate incidents due to the CCPO's recommendations were an obstacle to him fulfilling the duties of a sergeant. And there is no proof the two written reprimands plaintiff received were in retaliation for refusing to change the investigation report. The reprimands, which did not constitute a demotion or reduction in pay, were the direct result of plaintiff's misconduct: he admittedly left his watch desk duty without approval and did not ask a supervisor before responding to a domestic violence call.

Lastly, plaintiff has not satisfied CEPA's fourth prong. As noted in analyzing the first three prongs, plaintiff has not shown there was any whistle-blowing activity and adverse employment action.

To the extent we have not specifically addressed any of plaintiff's arguments, it is because we conclude they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Because we affirm the summary judgment order dismissing plaintiff's complaint, defendant's cross-appeal is dismissed as moot.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14

A-3037-21